**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

     Plaintiff,

vs.

MD NOW MEDICAL CENTERS, INC.,

     Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant MD Now Medical Centers, Inc. ("Defendant") for injunctive relief, damages, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Plaintiff Juan Carlos Gil brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant's business.

2.     Hospital systems can make choices (unlike visually impaired individuals) and can either make their hospitals and medical clinics inclusive, or they

can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3.      When hospital systems owners and operators do not take steps necessary to notice people of their hospitals and medical facilities' limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4.      This case arises out of the fact that Defendant MD Now Medical Centers, Inc. has operated its medical clinics in a manner and way that effectively excludes individuals who are visually impaired from access to Defendant's medical clinics based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's www.mymdnow.com website ("Website") so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendant effectively and timely such that their access to Defendant's various medical clinic locations are not impeded; as such impediment has rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

**JURISDICTION & VENUE**

6.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28

U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

7.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

8.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting violations of the ADA and Section 504 occurred in this District. Further, Defendant's medical clinics are located in the district.

9.      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Juan Carlos Gil

10.     Plaintiff Juan Carlos Gil is a resident of the state of Florida, resides within the Southern judicial district, is *sui juris*, and is disabled as defined by the ADA and Section 504 of the Rehabilitation Act.

11.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Plaintiff suffers optic nerve damage and is legally blind. Plaintiff also suffers from cerebral palsy, is unable to walk, and is confined to a wheelchair.  Plaintiff is substantially limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2) and §36.105(2)(iii)(B).

12.      Plaintiff is an athlete who travels for his athletic triathlon endeavors, and also is an advocate for the rights of blind and wheelchair bound disabled individuals.[1]

13.      In the past year, Plaintiff has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[2], the American Counsel for the Blind convention in Nevada, and various focus groups and meetings throughout the east coast (including New York and Boston).

14.      Plaintiff cannot use the computer without the assistance of screen reader[3] software.

**MD Now Medical Centers, Inc.**

15.      Defendant MD Now Medical Centers, Inc. is a Florida for profit corporation.

16.      Upon information and belief, at all times material hereto, Defendant owns, operates, and/or manages the day-to-day affairs and facilities of Care Resource Medical Center which is operating within Palm Beach, Broward, Miami-Dade counties in the State of Florida.

17.      Defendant is a recipient of federal Medicare and Medicaid funds as well as other federal funds and grants and is therefore subject to the requirements of Section 504 of the Rehabilitation Act.

---

[1] Juan Carlos Gil has traveled to speak on disabled rights, written letters, and mentored other disabled individuals as well as being  the Plaintiff in the Landmark Historic federal trial over Web Accessibility (*Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020);  See press release on case: www.prweb.com/releases/2017scottrdinin/06civilrights/prweb14437034.htm
[2] July 2017
[3] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

18.     In order to receive federal funding (directly or indirectly), Defendant is required to develop policies and procedures that ensure that persons who are blind or visually impaired will receive adequate and effective communication.

## FACTS

19.     Plaintiff's disability limits his major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

20.     Plaintiff frequently utilizes the internet. Due to the fact that he is legally blind, to effectively communicate and comprehend information available on the internet and to access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

21.     At all times material hereto, Defendant has owned or operated the Care Resource Medical Centers which is a health care provider open to the pubic consisting of medical clinics specializing in urgent care.

22.     Being a health care provider open to the public, Defendant's Care Resource Medical Centers are each place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(F) and 28 C.F.R. Part 36 and are referenced throughout as "medical clinic(s)," "Care Resource Medical Center," or "Place(s) of Public Accommodation."

23.     As the operator of Care Resource Medical Center, Defendant is a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "… professional offices of a health care provider as defined in 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(6).

24.     The Defendant controls, maintains, and/or operates the website known as www.mymdnow.com ("Website"), which is a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server.

25.     Defendant's Website describes Care Resource Medical Center's federally funded health care programs and activities which Plaintiff would like to access.

26.     The Website permits the public to obtain information on insurance carriers that are accepted at Defendant's medical clinics, inquire about Medicare and Medicaid covered medical services, inquire about types of treatments and services offered, and payment information.

27.     The Website also provides information regarding the types of urgent care provided including (but not limited to) care for insect bites, bee stings, cuts, drug screening, respiratory conditions, infections, sprains, strains and broken bones, and drug testing.

28.     The Website also provides information regarding job openings and online job applications.

29.     Most importantly, the Website serves as an online patient portal so that the public can use online appointment scheduling, pay their medical bills online and obtain coupons for discounts on medical services.

30.     For all of the reasons as delineated herein, clearly, the Website is an integral part of the provision of medical professional services by Defendant and a gateway and nexus to medical clinics and as such is a Place of Public Accommodation

pursuant to Title III, 42 U.S.C. §12181(7)(F) of the ADA[4], 28 C.F.R. §36.104(2), and Section 504 of the Rehabilitation Act.

31.     Plaintiff Juan Carlos Gil is in need of medical services such as offered by and through Care Resource Medical Center medical clinics.

32.     During May of 2018, Plaintiff called Defendant to find out if his medical insurance carrier was accepted at Defendant's medical clinics and to inquire about the types of medical services that were offered at Defendant's medical clinics, particularly at the urgent care medical clinic located at 4001 SW 72nd Avenue in Miami, which is close to Plaintiff's home.

33.     Plaintiff is particularly interested in Care Resource Medical Center due to his specific medical needs, and his interested in finding urgent care facilities close to his home particularly related to his specific medical needs.

34.     Plaintiff asked Defendant's representative to find out if Care Resource Medical Center was equipped to treat for him as a blind individual suffering from optic nerve damage and cerebral palsy who is in need of urgent care on a periodic basis such as for respiratory infections, ear infections, physical therapy and sore throat. Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to its Website.

35.     Following communications with Defendant's representative, Plaintiff attempted to utilize Defendant's Website as instructed by Defendant's representative.

---

[4] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

36.     Plaintiff utilizes screen reader software, which when utilized allows him (as a blind individual) to communicate with internet websites and the ability to access/comprehend PDF documents.

37.     When Plaintiff tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

38.     Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[5].

39.     Furthermore, Defendant's Website does not have the sign of website accessibility[6].

40.     Defendant's Website was inaccessible so Plaintiff could not:

    a.  find out what information was needed to bring to Defendant's medical clinics in order to seek treatment,
    b.  find out if his medical insurance is accepted at Defendant's medical clinics,
    c.  schedule an appointment online, and
    d.  pay for medical services online

41.     Plaintiff's expectation of participating in online medical health management and online management of his medical bills was vanquished since he could not access Defendant's Website at all to avail himself of the latest services which Defendant offers to the public.

---

[5] "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design."  Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[6] 

42.     Defendant's Website provides multiple coupons for medical care savings such as its $10 off flu shot (https://www.mymdnow.com/coupon/10-off-flu-shot-high-dose-vaccine/).    However, the fact that Defendant's Website and its electronic documents do not interface with Plaintiff's screen reader software, Plaintiff is unable to take advantage of the coupon specials.

43.     While Defendant claims to not deny services to any member of the public and to not discriminate by placing its non-discrimination policy within its Website[7], Plaintiff has been denied services because he is unable to comprehend such non-discrimination and non-denial of services as delineated within the Website.

44.     While Defendant addresses individuals with disabilities on its Website and provides information on how it's physical medical clinics accommodate individuals with disabilities, the fact is that its Website is inaccessible to blind individuals.  Therefore, despite Defendant's notice of accessibility within its Website, Defendant's Website is inaccessible, and Plaintiff is unable to comprehend the Website.

45.     The Website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms.

46.     Within Defendant's Website the public can access provided electronic documents on demand.  Defendant offers the public access to its electronic documents online though Portable Document Format, which is commonly referred to as "electronic documents" or PDFs."

---

[7] https://www.mymdnow.com/non-discriminationlanguage-notice/

47.     Blind and/or impaired persons require assistive devices (such as screen reader software) to read/comprehend content when it is provided in Portable Document Format.

48.     The electronic documents offered in Defendant's Website were not coded for accessible to screen reader software.

49.     Online demand viewing of electronic documents on Defendant's Website is not an option available to Plaintiff (and other persons with vision disabilities) because the electronic documents Defendant has provided on its Website are in a non-accessible format for individuals who use screen readers.

50.     Plaintiff's inability to communicate with/comprehend Defendant's Website and the electronic documents contained therein has resulted in a *virtual barrier* which has created an *effective barrier* to access to Defendant's Care Resource Medical Center medical clinics and the medical services offered by Defendant. Plaintiff's inability to fully use Defendant's Website and his inability to access the electronic documents therein has hindered, impeded and inhibited Plaintiff's access to Defendant's physical medical clinics.  Plaintiff has suffered as a result and has suffered particularized harm and an injury in fact.

51.     While the Plaintiff could certainly make arrangements for transportation of himself and his wheelchair to Care Resource Medical Center medical clinics  (location) without access to the services and information on what is needed to obtain medical care, but due to the Website's lack of accessibility, Plaintiff cannot make specific plans to travel, as he faces a great deal of uncertainty, anxiety, and foreboding in physically undertaking such an outing  because he is uncertain (and lacks the basic understanding) of

the *who, what, where, and how* of Defendant's medical services and if he can afford/pay for those services in order to physically travel to Defendant's Care Resource Medical Center.

52.   The fact that Plaintiff could not comprehend Defendant's Website and PDF documents located therein left him with the feeling of segregation, rejection, isolation, and unable to participate in his own health decisions in a manner equal to that afforded to others who are not similarly disabled. Therefore, Plaintiff has suffered an injury in fact.

53.   Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to Defendant's physical medical clinic locations in order to participate in the services offered at Defendant's medical facility(ies). Plaintiff's inability to communicate with / comprehend Defendant's Website has impeded Plaintiff's ability to patronize Defendant's physical Places of Public Accommodation.  As such, the Plaintiff will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

54.   On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

55.   On information and belief, Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group and an Automated Accessibility Testing program to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

56.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

57.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its www.mymdnow.com website accessible.

58.     On information and belief, Defendant does not have an Axillary Aids and Services Accessibility Policy.

59.     On information and belief, Defendant has not provided transparency to the public by disclosing its intent to correct the inaccessibility of its Website and the electronic documents therein.

60.     On information and belief, Defendant has not offered any other credible form of Auxiliary Aids and Services other than its Website.

61.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

62.     Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

63.     On information and belief, the Defendant is aware of the barriers to effective communication within its Website which prevent individuals with disabilities

who are visually impaired from the means to comprehend the information presented therein.

64.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and in punishment and isolation of blind and low vision individuals from the rest of society.

65.     According to the National Federation for the Blind[8], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[9].

66.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

67.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

68.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

---

[8] See  https://nfb.org/blindness-statistics
[9] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

69.      Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-68 above.

### Requirement for Effective Communication

70.      The ADA and implementation of ADAAG require that Public Accommodations (and Places of Public Accommodation) ensure that communication is effective.

71.      According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems".  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

72.      Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

73.      Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis  of disability by  public   accommodations and   requires   places  of public accommodation to  be  designed,  constructed,  and  altered  in  compliance  with  the accessibility standards established by Part 36.

14

74.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

75.     By virtue of Defendant's business being a health care provider, which is open to the public, each of Defendant's medical clinics are a place of public accommodation subject to the requirements of Title III of the ADA. 42 U.S.C. §12181(7)(F).

76.     As Defendant's medical clinics are each a Place of Public Accommodation, the ADA prohibits any and all barriers which would limit access by the visually impaired.

77.     When the visually impaired are prohibited from obtaining health care information, determining if their medical insurance carriers are accepted, learning about medical services provided, from making an appointment and from paying medical bills online, those visually impaired individuals have been barred from accessing that medical care provider/medical clinic, and from obtaining medical care that they require.

78.     Virtual barriers to access is just as real as physical barriers to access, for without health care information, acceptability of insurance, and ability to investigate and choose a medical provider, the visually impaired have no access to the goods and services of that medical facility, which is a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

79.     The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public

15

accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[10].

80.     The Court has held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

81.     Consistent with the text and legislative history of the ADA, the Department of Justice has long affirmed the application of Title III of the ADA to websites of public accommodations[11]; see Statement of Interest filed by the Department in *Andres Gomez v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

82.     Pursuant to 42 U.S.C. §12181(7)(F), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the

---

[10] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

[11] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

www.mymdnow.com website, as defined within §12181(7)(F), and is therefore subject to the ADA.

83.     Defendant's  www.mymdnow.com  website is a *Place of Public Accommodation* under 42 U.S.C. §12181(7)(F) as the Website also serves as an integral part of (and a gateway to) Defendant's Care Resource Medical Center's medical clinics, by providing a patient portal (allowing patients to view and pay medical bills online, make appointments online, and view medical records online, providing the public information on the various locations, services provided, health insurance, medical providers and to inquire about pricing for services as well as financial assistance. See: *Gil v Winn-Dixie Stores Inc.* 16-cv-23020 (S.D. Fla. June 13, 2017).

84.     As stated hereinabove, on inquiry, representatives within Defendant's physical medical clinic locations have referred individuals (specifically, the Plaintiff) to Defendant's Website for additional information as to the medical services which Defendant provides at its medical clinics.

85.     By Defendant's representatives referring the public and visually impaired individuals to its Website, the Website has been rendered an integral part of and gateway to Defendant's physical medical clinic locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical medical clinics.

86.     Defendant's Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its

applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

87.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . *should keep pace with the rapidly changing technology of the times.*" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[12] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[13] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

88.     Recent case law supports that the intangible barriers presented within Defendant's Website and PDF documents therein are violative of the ADA.  In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[14], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where

---

[12] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.
[13] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services
[14] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 (**emphasis added**).

89.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services.  Plaintiff's injury is real, has occurred and is continuing. Plaintiff's injury will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

90.     Recent Case law supports the Plaintiffs position, that companies which have not fully updated their websites and PDF documents therein so that they are accessible to visually impaired individuals are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

91.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services,

facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

92.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

93.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

94.     As a result of the inaccessibility of Defendant's physical medical clinic locations precipitated by the virtual barriers within its Website and PDF documents therein, visually impaired individuals including Plaintiff are denied full and equal access to Defendant's physical medical clinic locations, in derogation of 42 U.S.C. §12101 et. seq., and 42 U.S.C. §12182 et. seq.

95.     Types of website programming errors include (but are not limited to) *(i)*
*Programming Error Types* ("PETs"), which are easily identifiable and correctable, *(ii)*
*Programing Alert Error Types* ("PATs"), which are prone to making the website
inaccessible, and *(iii)* Design Errors ("DE's") that create empty headings and text
fields that create confusion for a user that rely on the 'TAB' key to navigate a web
page.

96.     A sampling review of Defendant's Website revealed that the Website is
not functional for users who are visually impaired.  The Website contains several types
of barriers that make access inaccessible such as:

1)  The language of the document is not identified,
2)  Image alternative text is not present,
3)  A form control does not have a corresponding label,
4)  Alternative text is likely insufficient or contains extraneous information,
5)  An event handler is present that may not be accessible,
6)  A heading level is skipped,
7)  Flash content is present,
8)  Adjacent links go to the same URL,
9)  A link contains no text, and
10) Alternative text is likely insufficient or contains extraneous information.

**PDF Documents**

97.     Defendant's website contains one or more links to a PDF attachment.
An example of one such link is to coupons for medical services
(https://www.mymdnow.com/patients/urgent-care-coupons).  The PDF attachment's
flat surface does not contain accessible coding. The PDF document does not include a
text-based format (or equivalent). Defendant has not added 'alt[15]' tags or long

---

[15] 'alt' refers to 'alternative text'

descriptions for the PDF within its website. The PDF attachment has not been provided in HTML or with a text equivalent, and is not a webpage[16], therefore, it is inaccessible to the visually impaired.

98.    In order to meaningfully access PDF documents, blind and visually impaired individuals require that PDF documents be saved in an accessible format. Much of the content provided in PDF format within Defendant's Website is not accessible for persons with screen readers.

99.    Providing PDF documents in a format that can be recognized by screen reader software and therefore making those PDF documents accessible to the visually impaired would not result in any undue burden to Defendant and would not fundamentally change the nature of Defendant's provision of medical services.

100. The failure of Defendant's PDF documents to be accessible impedes Plaintiff (and other visually impaired individuals) from fully accessing the medical services provided by Defendant and in so doing, Defendant has discriminated against the visually impaired.

**Violations of the ADA**

101.   Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's electronic (PDF) documents and Website (in general). These violations are ongoing.

---

[16] (which is an internet document usually in HTML)

102.    As a result of the inadequate development and administration of Defendant's electronic (PDF) documents and Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

103.    Further, the Website does not include the universal symbol for the disabled[17] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

104.    There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating basic Auxiliary Aids and Services components to make the Website accessible, which would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

105.    As a result of the inadequate development and administration of Defendant's electronic (PDF) documents and Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

106.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.mymdnow.com website to a statement as to the Defendant's policy to ensure

---

[17]  , or HTML "Accessibility" link for those individuals who are visually impaired

persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.mymdnow.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website and of viewing PDF documents provided to the public within Defendant's Website for purposes of i) providing a patient portal (allowing patients to view and pay medical bills online, view medical records online and make appointments online), ii)  obtaining information on insurance carriers that are accepted, iii) inquire about Medicare and Medicaid covered medical services, iv) to inquire about billing.

107.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by the Defendant.

## COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

108.    Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth herein above.

109.     Plaintiff is legally blind, which substantially limit him in his major life activities, including his ability to effectively communicate in the sighted world. Therefore, Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act.

110.     Defendant is a recipient of federal financial assistance by virtue of receipt of Medicaid payments, as well as other federal financial assistance.

111.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

112.     Defendant is aware that its Website does not interface with screen reader software used by the Visually Impaired.

113.     By virtue of the fact that Defendant operates medical clinics which are recipients of federal financial assistance, Defendant knew or should have known that blind and visually impaired individuals are likely to utilize medical services Defendant provides through Defendant's medical clinics.

114.     Specifically, as related to violations of Section 504, blind and visually impaired individuals need to comprehend the covered services which Defendant provides. Yet, Defendant's Website is not equipped to communicate with blind and visually impaired individuals by being programed to interface with screen reader software.   Thus, Defendant has failed to provide Plaintiff (and other blind and visually impaired individuals) *any* appropriate and effective auxiliary aids and services for use with its Website.

115.     Because of the failure to provide effective communication, Plaintiff (and other blind and visually impaired individuals) have an incomplete understanding of the health care information, medical services provided, billing, financing, and appointments at Defendant's medical clinic locations.

116.     The failure is so egregious that individuals who are visually impaired are (among other things) unable to obtain information on which insurance carriers accept the medical service providers at Defendant's medical clinics and learn about the type of medical conditions treated at the medical clinic locations. Such failure has impeded individuals who are visually impaired from independently accessing Defendant's business.

117.     As such, Defendant has failed to provide services to Plaintiff (and other blind and visually impaired individuals) as Defendant would have provided a similarly situated sighted patient.

118.     Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated Plaintiff's rights under Section 504 by discriminating on the basis of a disability.

119.     Defendant has discriminated against Plaintiff (and other blind and visually impaired individuals) by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are blind or visually impaired, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

120.    Defendant's actions were done with deliberate indifference to the rights and needs of Plaintiff (and other blind and visually impaired individuals). See: *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, (11th Cir. 2012).

121.    As a result of Defendant's actions, Defendant has discriminated against Plaintiff (and other blind and visually impaired individuals).

122.     As a result of Defendant's actions, Plaintiff has been damaged, has suffered injuries and experienced emotional suffering, pain and anguish.  Plaintiff has suffered an injury in fact.

123.   Plaintiff will continue to face discrimination and suffer damages, as he continues to desire to utilize medical services available at Defendant's medical clinics.

124.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant MD Now Medical Centers, Inc. and requests that:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA and Section 504 of the Rehabilitation Act;

b) The Court enter an Order requiring Defendant to provide individuals with disabilities, including the Plaintiff, an equal opportunity to participate and benefit from the goods, services, facilities, privileges, advantages and accommodations provided through its Website. The Website must be accessible by individuals with disabilities who use computers, laptops, tablets and smart phones.

c) The Court enter an Order requiring Defendant to update its Website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA and Section 504 of the Rehabilitation Act, including compliance with Web Content Accessibility Guideline 2.0 level AA (WCAG 2.0 AA");

d) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[18]  and sign of website accessibility[19] (standard WCAG 2.0) within its Website.  Such a clear display is to insure that individuals who are disabled are aware of the availability of the accessible features of the Website;

e) The Court enter an Order compelling Defendant to require any third party vendors who participate on its website to be fully accessible to the disabled by conforming with WCAG 2.0 criteria.

f) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA and Section 504;

---



28

g) The Court enter an Order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

h) The Court enter an Order directing Defendant to create policies, practices and procedures toward persons with visual disabilities;

i) The Court enter an Order requiring Defendant to establish or contract an Auxiliary Aids and Services Accessibility User Testing Group and Automated Accessibility Testing program to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

j) The Court award damages in an amount to be determined at trial;

k) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

l) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 4th day of June,  2018.

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_